UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALVIN JOSEPH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 07 C 219 |
| | ) | |
| COOK COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant County of Cook ("the County") for summary judgment in its favor on the complaint of Plaintiff Alvin Joseph. For the reasons set forth below, the County's motion for summary judgment is granted and the motion to strike is denied as moot.

BACKGROUND

In June 2003, Joseph applied to work as a motor vehicle driver for the County.[1] Applications for the position were accepted from May 30 until June 30 of that year.

---

[1] The factual recitation contained herein is derived from documents attached to the undisputed facts set forth in the County's Rule 56.1 statement of material fact and facts that are admitted by operation of Local Rule 56.1. See *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). We have disregarded any facts asserted in the parties' statements of material fact that are unsupported by the record or that do not comply with Local Rule 56.1. See *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

The posting stated that applicants needed to have a high school diploma or GED as well as a valid Class B Commercial Driver's License ("CDL"). Beginning July 1, a hiring freeze took effect in the County until November 30. On August 1, 2003, the County notified Joseph by letter that his application had been received and reviewed and that he was scheduled to take an in-person performance test on September 8. On that day, Joseph went to take the test. While he was waiting in line to begin, he was given an index card to fill out with information including his name and his place of birth. He stated that he was born in Iraq.

On November 13, the County sent Joseph a letter informing him that he had "successfully qualified on all portions to date of the assessment process" and that his name may be referred to a hiring department to be interviewed. Five days later, Joseph's name was transmitted, along with 167 other eligible candidates, to the hiring department of the County's Highway Department. The index card he filled out was not included with the eligibility list, since the cards are retained by the Cook County Bureau of Human Resources in its separate files and are not forwarded to the individual Department Offices in conjunction with other information about potential candidates for County employment. On December 4, the Highway Department personnel supervisor interviewed Joseph in person.

Almost two years went by. On September 16, 2005, Charles Hernandez, a County employee, spoke with Joseph about a position as a driver for the County. Joseph attempted to contact the County several times thereafter to inquire about the position. On November 1, 2005, another hiring freeze started in the County.[2] Having not heard anything from the County about the driver position, on December 20, 2005, Joseph filed a charge with the EEOC, alleging that the County did not hire him subsequent to his September 16 conversation with Hernandez on the basis of his national origin.

In October 2006, the EEOC issued a right-to-sue letter, and Joseph filed suit in this court, contending that the County had violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. After the parties completed discovery, the County moved for summary judgment on the entirety of Joseph's complaint pursuant to Fed. R. Civ. P. 56.

---

[2]The documents submitted by the County include only the November 1, 2005, resolution creating the hiring freeze, which does not set a concrete end date but instead specifies that the freeze will continue until the Annual Appropriation Bill for the Fiscal Year 2006 is passed. Ex. B to Def.'s Ex. 6. However, public records of which we may take judicial notice indicate that the bill was passed (thus ending the freeze) on February 9, 2006. Post Board Action Agenda, Special Meeting of the Cook County Board of Commissioners, Feb. 9, 2006, at 2, available at http://www.cookctyclerk.com/pdf/020906pba.pdf.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. *Id.* The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Id.* The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

With these principles in mind, we turn to the County's motion.

## DISCUSSION

### I. Title VII Claim

Title VII of the Civil Rights Act of 1964 makes it unlawful, *inter alia*, for an employer to fail or refuse to hire a candidate for employment because of that candidate's national origin. 42 U.S.C. § 2000e-2(a)(1). In Illinois, if an employee has not filed an EEOC charge within 300 days of alleged discriminatory conduct, a Title VII claim based on that conduct will generally be time-barred. 42 U.S.C. § 2000e-5(e)(1); *Sharp v. United Airlines*, 236 F.3d 368, 372 (7th Cir. 2001).

*A. Timeliness*

As a threshold matter, the County asserts that no Title VII liability can lie for the events that Joseph describes in 2003. There is no dispute that he did not file a charge with the EEOC until December 20, 2005. Application of the 300-day limitation period would encompass events occurring after February 24, 2005. There is no argument advanced or evidence proffered that would support an extension of the 300-day period, and we conclude that any claim of liability for actions taken prior to that date are untimely and therefore nonactionable.

*B. Liability for Events Underlying Timely Assertions*

As for the County's actions (or inaction) between February 24 and December 20, 2005, before Joseph can challenge their lawfulness in a federal lawsuit, he must exhaust

his administrative remedies within the EEOC by bringing them to the attention of the agency within the charge filed before it. With respect to this time period, Joseph's EEOC charge states

> On September 16, 2005 I was contacted and told that I would be hired conditionally, and that I would shortly receive a letter to report for a physical. I previously passed the qualifying exam and had completed an interview. Respondent failed to send me the letter admitting me to the physical. I called the Department Commissioner's Office. That department refused to give me any answers as to when my documents would be sent. The documents still have not been sent.

Thus, the Title VII portion of the suit boils down to the question of whether the County did not hire him between September 16 and December 20, 2005, because of his national origin. A plaintiff claiming discrimination in violation of Title VII can proceed under either the direct method or the indirect method of establishing her claim. *See Sun v. Bd. of Trustees of Univ. of Illinois*, 473 F.3d 799, 812 (7th Cir. 2007). A plaintiff using the direct method must set forth actual evidence of discrimination. *See id*.

If a plaintiff has no evidence that the motivation for an employment action was an unlawful one, he or she can still survive summary judgment using the indirect method. *Brewer v. Bd. of Trustees of University of Illinois*, 479 F.3d 908, 915 (7th Cir. 2007). The indirect method provides an avenue for plaintiffs without direct evidence of unlawful motivation to create a presumption of discrimination through one of the familiar variants of the burden-shifting mechanism first set out in *McDonnell-Douglas*

*v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824 (1973). In the context of a failure to hire case such as this one, Joseph can create a presumption of unlawful discrimination by showing that he is a member of a class protected by Title VII, that he applied for and was qualified for the position at issue, that he was not hired despite his qualifications, and that the job either remained open or was given to someone who is not a member of his protected class. *Rudin v. Lincoln Land Comm. Coll.*, 420 F.3d 712, 724 (7th Cir. 2005).

There is no dispute that Joseph is a member of a protected class by virtue of his national origin. Neither is there any dispute that he applied to work for the County and that he was never hired. However, the County challenges to Joseph's ability to raise a presumption of discrimination on the third and fourth factors. First, it asserts that he was not qualified to be a Motor Vehicle Driver because he did not have a valid Class B CDL in September 2005. Second, it implies that the position for which he was considered was not open because of the hiring freeze in effect from November 1, 2005 until February 9, 2006.

The state of Joseph's licensure is anything but clear. The record proffered by the parties includes copies of three of Joseph's driver's licenses. According to the information on the first license, Joseph had a CDL that was issued on September 27, 1999, which expired on September 27, 2003. Def.'s Ex. 8. It states that he had

Restriction B, Classes A and M, and Endorsement *X*. *Id.* The second license, which also indicates it is a CDL, was issued July 28, 2003 with an expiration date of September 27, 2007. Pl.'s Exs. in Opp. to Mtn. for Summ. Jgmt., p. 00032. Likewise, that license states that Joseph had Restriction B, Classes A and M, and Endorsement *X*. *Id.* The third license, issued November 28, 2005, with an expiration of September 27, 2007, contains Restriction B, Classes A and M, and endorsements of PSX**. Def.'s Ex. 10. Underneath Joseph's photo, the license states "SBP CLASS B." *Id.* The County contends that the license he had between September 27, 2003, and November 28, 2005, was not a valid Class B CDL. However, since the County states that the license that expired in 2003 was a valid Class B CDL, and the information on the face of that license is identical (with the exception of the dates listed) to the one issued on July 28, 2003, at best there is a question of fact as to whether Joseph was qualified to be a driver in September and October of 2005.

With regard to the fourth factor, the hiring freeze did not take effect for 6 weeks after Joseph and Hernandez spoke on September 16. Accordingly, for those 6 weeks, the job for which he applied remained open, and we conclude that Joseph has established the prima facie factors.

The business reasons set forth by the County are the same as those advanced to counter the third and fourth elements of the prima facie case. The burden thus shifts

back to Joseph to demonstrate that these reasons are pretextual, a smokescreen for an actual discriminatory animus toward him because of his national origin. In support of his contention that he was not hired in 2005 because he was born in Iraq, Joseph points to the index card that he filled out at the performance test two years earlier. That is the sole source of information about his national origin, and he presumes that, since he filled it out in applying for a County job, all County employees had access to that information. However, the undisputed facts presented by the County demonstrate that the index card is not forwarded to the hiring departments of specific Department Offices who consider eligible applicants. The simple existence of the card somewhere within the County files is not enough to establish that the decisionmakers within the Highway Department had any knowledge of Joseph's place of birth. Therefore, a reasonable finder of fact could not conclude that the true reason that he was not hired was because of his national origin. *See*, *e.g.*, *Adelman-Reyes v. Saint Xavier University*, 500 F.3d 662, 667 (7th Cir. 2007). Because Joseph cannot establish an unlawful potential reason for the County's actions, the County is entitled to summary judgment on his Title VII claim.

**II. 42 U.S.C. § 1981**

Under 42 U.S.C. § 1981, all people within the United States have the same ability to make and enforce contracts as white citizens do. As is the case under 42 U.S.C.

§ 1983, a related civil rights statute, when the defendant in a § 1981 suit is a governmental body, liability cannot be based solely upon vicarious responsibility for acts of employees of the particular government. *Smith v. Chicago School Reform Bd. of Trustees*, 165 F.3d 1142, 1148 (7th Cir. 1999). Instead, the plaintiff must show that the legal injury was directly inflicted by the body itself through an official policy or custom of discriminatory behavior. *Id.*; *see also Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 736-37, 109 S. Ct. 2702 (1989) (applying principles of *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978) to § 1981 cases).

In this case, the County, a governmental body, is the sole defendant. No evidence has been provided of an official policy or custom of discrimination toward employment candidates of Joseph's race.[3] Rather, even when viewed in a light most favorable to Joseph, the evidence presented to this court shows actions only with respect to him. That is insufficient to demonstrate an official policy or custom of the County. Thus, the County is entitled to summary judgment in its favor on the § 1981 claim.

The County also filed a motion to strike errata sheets Joseph filed in connection with his deposition. Because the contents of these sheets played no part in our decision on the motion for summary judgment, the motion to strike them is denied as moot.

---

[3]For purposes of § 1981, Iraqi citizens are considered to be of a different race than white citizens. *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1987) (Brennan, J., concurring).

## CONCLUSION

Based on the foregoing analysis, the County's motion for summary judgment is granted and its motion to strike the errata sheets from Joseph's deposition is denied as moot.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:   April 30, 2008